J-S10025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHEIKH ANSUMANA KOSHA | : | |
| | : | |
| Appellant | : | No. 1336 MDA 2024 |

Appeal from the Judgment of Sentence Entered April 15, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000673-2023

BEFORE:  BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY OLSON, J.:          **FILED: JUNE 2, 2025**

Appellant, Sheikh Ansumana Kosha, appeals from the April 15, 2024 judgment of sentence entered in the Court of Common Pleas of Berks County after a jury convicted Appellant of access device fraud – unauthorized use (Count 1) and theft by deception (Count 2).[1]  The trial court sentenced Appellant to a term of 364 to 729 days' incarceration on Count 2 and a concurrent term of 5 years' probation on Count 1.[2]  We affirm.

The trial court summarized the factual history as follows:

_____

[1] 18 Pa.C.S.A. §§ 4106(a)(1)(ii) and 3922(a)(1), respectively.  On Count 1, the jury determined that the value of the property was greater than $500.00. On Count 2, the jury determined that the value of the property was $200.00 or greater but less than $2,000.00.  Verdict Slip, 4/11/24.

[2] Appellant was awarded 430 days credit for time served towards the sentence of incarceration imposed on Count 2.  Appellant was also ordered, as part of the sentence imposed on Count 2, to pay costs and fines in the amount of $550.00.  Sentencing Order, 4/15/24.

On September 14, 2022, a [tele]phone order for a large quantity of beer was placed to Boyertown Beverage. [Appellant] arrived in the early afternoon to pick up the beer and make payment. [Appellant] told the employee and owner of Boyertown Beverage[] that he did not have any currency or credit cards with him because he left his wallet [] at [his] house. Playing on [the owner's] good graces about the party that was purportedly about to occur for which [Appellant] needed the beer, [Appellant] was permitted to make a [tele]phone call and a credit card number was provided to [the owner over the telephone]. Once the transaction was approved, [the owner] noted on the receipt a New Jersey identification number, from an [identification card] that [Appellant] provided in the form of a picture on his [cellular tele]phone, and a [tele]phone number provided by [Appellant]. He then proceeded to help [Appellant] load the beer onto a U-Haul. When [the owner] was contacted by the credit card company about a disputed charge from this transaction, and the money was reversed from his account, [the owner] attempted to contact [Appellant]. He ultimately contacted the police and provided them, and the credit card company, with the information he [] obtained at the time of the transaction. The credit card company did return the money to [the owner,] and the police filed [the aforementioned] charges against [Appellant.]

Trial Court Opinion, 11/13/24, at 2-3.

On April 11, 2024, a jury convicted Appellant of access device fraud and theft by deception. Appellant was sentenced on April 15, 2024, as set forth *supra*. On April 25, 2024, Appellant filed a post-sentence motion. After conducting a hearing on Appellant's motion on May 30, 2024, the trial court denied Appellant's post-sentence motion on August 13, 2024. This appeal followed.[3]

---

[3] Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises the following issues for our review:

[1.] Whether the evidence produced at trial was sufficient to support Appellant's conviction of access device fraud and theft by deception[?]

[2.] Whether the trial court erred in allowing [witnesses to refer to the contents of] a document [titled] a ["]Dispute Notification["] under the business records exception to the prohibition against hearsay[?]

Appellant's Brief at 3 (extraneous capitalization omitted).

In his first issue, Appellant challenges the sufficiency of the evidence to support his conviction of access device fraud, for which our standard and scope of review are well-settled.[4]

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime

_____

[4] To the extent that Appellant challenges the sufficiency of the evidence to support his conviction for theft by deception, we find this issue waived for failure to raise the issue in his 1925(b) statement. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (stating, "[a]ny issues not raised in a 1925(b) statement will be deemed waived"); *see also Commonwealth v. Rice*, 331 A.3d 5, 11 (Pa. 2025); Appellant's Rule 1925(b) Statement, 10/1/24, at ¶¶1-3 (raising weight of the evidence claims as to the access device fraud and theft by deception convictions but only challenging the sufficiency of the evidence as to the access device fraud conviction).

- 3 -

beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [fact-finder,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019).

Section 4106(a)(1)(ii) states that a person commits the offense of access device fraud if he or she "uses an access device to obtain[,] or in an attempt to obtain[,] property or services with knowledge that" "the access device was issued to another person who has not authorized its use[.]" 18 Pa.C.S.A. § 4106(a)(1)(ii). Therefore, to sustain a conviction of access device fraud under Section 4106(a)(1)(ii), the Commonwealth must establish "(1) unauthorized use of an access device [by the defendant,] (2) with intent to obtain property or services[,] (3) knowing the device was issued to another." *Commonwealth v. Young*, 35 A.3d 54, 62 (Pa. Super. 2011), *appeal denied*, 48 A.3d 1249 (Pa. 2012). An "access device" is defined as "[a]ny card, including, but not limited to, a credit card, debit card and automated teller machine card, plate, code, account number, personal identification number[,] or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services[,] or anything else of value or that can be used to transfer funds." 18 Pa.C.S.A. § 4106(d).

Here, Appellant asserts simply that the Commonwealth failed to present evidence that he used the credit card without authorization. Appellant's Brief at 7. Appellant contends that the only evidence of a dispute over the use of

- 4 -

the credit card was the Commonwealth's Exhibit 3, which referred to the reversal of the charge as being the result of "fraudulent transaction – no cardholder authorization." *Id.* at 8. Appellant argues that because Commonwealth Exhibit 3 was not admitted and published to the jury, no evidence was presented to the jury that established Appellant's unauthorized use of the credit card. *Id.*

In evaluating the sufficiency of the evidence to support Appellant's conviction of access device fraud, the trial court stated that "[t]he Commonwealth established by circumstantial evidence that [Appellant] was not an authorized user of the [credit] card tendered to [the owner of the beer distribution store]." Trial Court Opinion, 11/13/24, at 4. We agree.

At trial, the owner of the beer distribution store testified that Appellant ordered the beer he received by contacting the store and providing the owner with the credit card information over the telephone. N.T., 4/11/24, at 80-81. The owner processed the purchase transaction using the credit card information provided by Appellant before ending the telephone conversation. *Id.* at 83. When Appellant arrived to pick up the beer, the owner asked Appellant for the credit card used in the transaction but Appellant claimed to have forgotten to bring the credit card. *Id.* at 81. Appellant produced a photograph *via* his cellular telephone of an identification card and provided the owner with a telephone number. *Id.* at 60-61. The owner noted the information on the sales receipt. *Id.* at 61. The owner stated that, sometime after the transaction involving Appellant, the credit card processing company

reversed the transaction and removed the money from the business account. *Id.* at 70. The owner contacted Appellant regarding the transaction and asked him "to approve this transaction" but Appellant refused and told the owner to contact the police. *Id.* at 72.

In viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we find there was sufficient evidence to support Appellant's conviction. The owner's testimony that the credit card company reversed the transaction and withdrew payment from his bank account was sufficient to establish, circumstantially, that Appellant's use of the credit card was unauthorized. Therefore, Appellant's sufficiency claim is without merit.

Appellant's second issue challenges the admissibility of evidence, specifically the owner's and investigating police officer's reference to the contents of the Dispute Notification the owner received from the credit card company indicating that the credit card transaction was a "fraudulent transaction" and conducted with "no cardholder authorization." Appellant's Brief at 9-10.

"An appellate court's standard of review of a trial court's evidentiary rulings, which include rulings on the admission of hearsay, is abuse of discretion." ***Commonwealth v. Rivera***, 238 A.3d 482, 492 (Pa. Super. 2020) (original brackets omitted), *appeal denied*, 250 A.3d 1158 (Pa. 2021). "Hearsay" is defined as "a statement that [] the declarant does not make while testifying at the current trial or hearing[, and] a party offers in evidence to

prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1) and (2). A "statement" is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Pa.R.E. 801(a). "Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Rivera*, 238 A.3d at 492 (citation and original quotation marks omitted); *see also* Pa.R.E. 802.

Here, Appellant asserts that the Commonwealth attempted, but was unsuccessful, in admitting, as Commonwealth Exhibit 3, a document titled "Dispute Notification." Appellant's Brief at 10. The Dispute Notification, which was sent by the credit card company and received by the owner, stated that the credit card transaction had been reversed and identified the reason for the reversal as "fraudulent transaction - no cardholder authorization." Commonwealth Exhibit 3. Appellant contends that, while the Dispute Notification was never formally admitted into evidence, the owner and the investigating police officer referenced the letter in their testimony. Appellant's Brief at 10. Appellant argues that "[a]llowing witnesses to reference [the Dispute Notification,] which was not [formally] admitted into evidence[,] was in error and prejudiced Appellant by allowing the inference of impropriety without proof." *Id.*

A review of the trial transcript reveals that the Commonwealth attempted to admit the Dispute Notification, which was marked as Commonwealth Exhibit 3, but not publish the exhibit to the jury. N.T.,

- 7 -

4/11/24, at 55, 74. Appellant's counsel raised an objection to the admission of the exhibit on the ground that the exhibit constituted hearsay and did not satisfy the business records exception to hearsay. Ultimately, the trial court permitted the Dispute Notification to be marked as Commonwealth Exhibit 3 but did not admit the exhibit. Appellant's challenge to the admissibility of evidence, therefore, does not lie with the Dispute Notification document, which was never admitted into evidence, but, rather, lies with the witnesses' references to the document on the ground that the references were prejudicial.

At trial, the witnesses testified, as follows, with regard to the Dispute Notification:

| | |
|---|---|
| [Commonwealth:] | Did you receive paperwork in the mail reflecting that there was a problem with this transaction? |
| [Owner:] | Yes, I received something from the credit card company saying that this transaction was disputed. |
| [Appellant's Counsel:] | Objection, Your Honor, disputed. |

N.T., 4/11/24, at 64.

| | |
|---|---|
| [Commonwealth:] | Did you ever look into your accounts to see whether money had been withdrawn by the credit card company? |
| [Owner:] | I received the statement from the credit card company – from the credit card company saying that – |
| [Appellant's Counsel:] | Objection, Your Honor, hearsay. |
| [Owner:] | - that this money was withdrawn. |

*Id.* at 65.

| [Commonwealth:] | Sir, I'm handing you what has been marked as Commonwealth's Exhibit [] 3. Do you recognize this document? |
|---|---|
| [Owner:] | This was the letter from the credit card company saying that this transaction was disputed. |

*Id.* at 72.

| [Commonwealth:] | Did you review the document received in the mail? |
|---|---|
| [Police Officer:[5]] | Yes, I did. |

*Id.* at 87. Appellant's counsel raised one objection specifically based upon hearsay to the witnesses' testimony referencing the Dispute Notification. *Id.* at 65. Counsel also objected to the witness's use of the word "disputed" when referring to the Dispute Notification, which conveyed the content of the document to the fact-finder. *Id* at 64. It is apparent from the context of the testimony on page 64 of the notes of testimony that counsel's objection to the word "disputed" raised an objection based upon hearsay. Pa.R.Evid. 103(a)(1)(B) (requiring a party to state "the specific ground, unless it is apparent from the context," for the objection); *see also Commonwealth v. Cousar*, 928 A.2d 1025, 1041 (Pa. 2007) (stating that, "[t]he rule is well[-]settled that a party complaining, on appeal, of the admission of

---

[5] The police officer testifying was Officer Christopher Schott, who investigated the incident involving Appellant. N.T., 4/11/24, at 85-86.

evidence in the [trial] court [] will be confined to the specific objection there made"). With regard to the witnesses' other references to the Dispute Notification, Appellant's counsel failed to raise an objection. *Id.* at 72 and 87. Therefore, Appellant waived any claims related to the witnesses' reference to the Dispute Notification with the exception of the two objections lodged on pages 64 and 65 of the notes of testimony, wherein Appellant objected based on hearsay. *See Commonwealth v. Montalvo*, 956 A.2d 926, 936 (Pa. 2008) (reiterating that, "failure to object results in appellate waiver"); *see also* Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

In the two instances where Appellant objected based on hearsay, Appellant's counsel objected on the grounds that the owner "does not have knowledge of the claim that it was a fraudulent transaction and that the cardholder had not authorized it." *Id.* at 67. The owner did not, however, testify that the letter stated the transaction was fraudulent and was not authorized by the cardholder. Rather, the owner testified that based upon his receipt of the Dispute Notification, he investigated and learned that the money for the transaction had been withdrawn from his bank account. *Id.* at 65; *see also* Appellant's Brief at 8 (stating, "the jury heard no evidence of" a "fraudulent transaction" or lack of "cardholder authorization"). Moreover, the owner later testified that, in response to his receipt of the Dispute Notification, he ascertained that his "business had been assessed a chargeback from the credit card company," a statement to which Appellant did not lodge an

objection. Therefore, Appellant failed to demonstrate how he was prejudiced by the owner's reference to the Dispute Notification document.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/02/2025